UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GE FUNDING CAPITAL MARKET SERVICES, :
INC. and TRINITY FUNDING COMPANY, LLC, :
                                          :
                          Plaintiffs,     :
                                          :
             -against-                    :
                                          :
NEBRASKA INVESTMENT FINANCE            :
AUTHORITY,                                :
                                          :
                          Defendant.   :
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/14/2016

15 Civ. 1069 (LGS)

**ORDER AND OPINION**

LORNA G. SCHOFIELD, District Judge:

Plaintiffs GE Funding Capital Market Services, Inc. and Trinity Funding Company, LLC (collectively, "GE") bring this action against Defendant Nebraska Investment Finance Authority ("NIFA") seeking declaratory and equitable relief and money damages arising from NIFA's alleged breach of six investment agreements. NIFA moves for partial judgment on the pleadings. For the reasons below, the motion is granted in part and denied in part.

I.    **BACKGROUND**

For purposes of NIFA's motion, the following facts are drawn from the Second Amended Complaint (the "Complaint") and documents attached to the Complaint. The facts are construed in the light most favorable to GE as the non-moving party.

NIFA is an independent, quasi-governmental body established under the Nebraska Investment Finance Authority Act, Neb. Rev. Stat. §§ 58-201 to 58-272. NIFA's activities include providing sources of mortgage financing to Nebraska residents of low and moderate income levels at reduced rates. Between 1994 and 2000, NIFA issued certain series of bonds to finance its acquisition of mortgage loans or mortgage-backed securities, which were generated in

connection with purchases of homes by eligible Nebraska residents.  Each bond series was separately issued and named:  "NIFA's Single Family Housing Revenue Bonds 1994 Series ABCD," "NIFA's Single Family Housing Revenue Bonds 1994 Series A-1 and Series B-1," "1994 Series C-1 and Series D-1," "1995 Series A," "1995 Series B," "1996 Series A," and "2000 Series A and B."

The bonds were governed by a General Indenture of Trust (the "General Indenture") and several series-specific Supplemental Indentures executed by NIFA and its Trustee, Norwest Bank of Minnesota, N.A. (the "Trustee").  The purpose of these indentures was to secure repayment of moneys to the bondholders of the relevant series of bonds.  Accordingly, the General Indenture established a system of "special Funds and Accounts" to hold the proceeds from the bonds.  The General Indenture established nine funds, each with a specific purpose.  For example, the Revenue Fund held "all Revenues derived from the Mortgage Loans (including Defaulted Mortgage Loans) and the Mortgage-Backed Securities."  Within each fund, the General Indenture provided for the creation of a separate account for each bond series (the "Accounts").  Thus, the proceeds from each bond series were allocated across the same nine funds but kept segregated within each fund by the separate Accounts.

For each bond series, NIFA and the Trustee entered into an Investment Agreement with a former or current affiliate of GE.  The Investment Agreements provide that GE would pay a fixed rate of return to NIFA on amounts deposited in the Accounts.  The Investment Agreements further provide that NIFA could make withdrawals from the Accounts for "Permitted Withdrawal Purposes" and that GE would remit to NIFA on the "Termination Date" the outstanding principal balance and all unpaid interest thereon.  This arrangement was designed to

provide NIFA with an income stream so that NIFA could make debt service payments on, and ultimately redeem, each series of bonds.

As relevant here, the Investment Agreements define when GE must pay NIFA interest. Although there are slight, non-substantive variations across the agreements, § 2.2 of each of the Investment Agreements generally provides:

> Interest on the outstanding principal balance of each Investment shall accrue daily as of the close of business each day from and including the date of receipt thereof by [GE] to but excluding the earlier of the Termination Date and the date remitted to the Trustee as provided herein, at the applicable Rate of Earnings with respect thereto, provided that no interest will accrue on or after the Termination Date.

"Investment" is defined, through a series of steps, as specified "funds and accounts established under the Indenture in connection with the [bond series]." The "Termination Date" is a date certain set forth in Exhibit A to each Investment Agreement and ranging from March 2, 2026, to March 2, 2035. Each Investment Agreement also provides that it "shall terminate on the Termination Date, unless earlier terminated in accordance with its terms."

NIFA redeemed the bonds on a rolling basis between 2005 and 2010. Although the Investment Agreements required the Trustee to give GE notice if and when each bond series was redeemed, GE was not aware that any of the bond series had been redeemed until late 2014. NIFA continued to invest funds and accept interest payments under the Investment Agreements.

In September 2014, GE requested an explanation why the Investment Agreements had remained funded following the redemption of the bonds. On February 13, 2015, after GE and NIFA failed to reach agreement as to the status of the Investment Agreements following redemption, GE filed this action. GE seeks a declaratory judgment that NIFA had no right to further interest payments under the relevant Investment Agreement following redemption of each series of bonds and that NIFA's conduct in that regard constituted *ultra vires* activity. GE also

brings claims for unjust enrichment, constructive trust, breach of contract and breach of the duty of good faith and fair dealing.

## II.      LEGAL STANDARD

The Court reviews motions for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) under the same standard as Rule 12(b)(6) motions to dismiss. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).  The Court accepts as true all of the non-moving party's well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party.  *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011).  Judgment on the pleadings may be granted "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings."  *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

On a Rule 12(c) motion, the Court may consider "the complaint, the answer, any written documents attached to them, . . . any matter of which the court can take judicial notice for the factual background of the case[,] . . . any written instrument attached . . . as an exhibit, materials incorporated . . . by reference, and documents that, although not incorporated by reference, are integral" to the pleadings.  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted).

## III.      DISCUSSION

NIFA moves for judgment on the pleadings on all counts except Count I, which pertains to the missing 1994 Series ABCD Investment Agreement.  NIFA's motion is denied with respect to GE's claims for declaratory judgment (Counts II–VII) and breach of contract (Count XI), and

granted with respect to GE's claims for unjust enrichment (Count IX), constructive trust (Count X), and breach of the duty of good faith and fair dealing (Count XII).

### A.     Choice of Law

All parties agree that the choice of law provision in the Investment Agreements requires application of New York law to the entire action.  *See, e.g.*, *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law.").

### B.     NIFA's Right to Interest Payments Following Redemption of the Bonds

NIFA's motion for judgment on the pleadings is denied with respect to GE's claims for declaratory judgment regarding NIFA's right under the Investment Agreements to interest payments following redemption of the bonds, as the Investment Agreements are ambiguous on that point.

"The threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous.  Under New York law, the meaning of a contract that is unambiguous is a question of law for the court to decide."  *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000).  A contract is ambiguous if its terms "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010) (internal quotation marks omitted).  On the other hand, "[n]o ambiguity exists where the contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the

[contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Id.* at 467 (internal quotation marks omitted; alteration in original); *accord Banco Espirito Santo, S.A. v. Concessionaria Do Rodoanel Oeste S.A.*, 951 N.Y.S.2d 19, 24 (1st Dep't 2012).

A court's primary objective in interpreting a contract is "to give effect to the intent of the parties as revealed by the language of their agreement." *Compagnie Financiere CIC L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000). A contract should be read as whole "to ensure that undue emphasis is not placed upon particular words and phrases" and "to safeguard against adopting an interpretation that would render any individual provision superfluous." *Law Debenture Trust Co.*, 595 F.3d at 468 (internal quotation marks omitted). "The words and phrases in a contract should be given their plain meaning . . . ." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (internal quotation marks omitted).

NIFA and GE proffer competing interpretations of the Investment Agreements as they pertain to when interest payments to NIFA cease. NIFA argues that it is entitled to interest payments until the relevant Investment Agreement terminates, either on the Termination Date or "earlier . . . in accordance with its terms." Because neither the Termination Date nor any of the events expressly defined as triggering termination have come to pass for any of the Investment Agreements, NIFA contends that it should continue to receive interest payments. GE argues that the determinative issue is not whether the Investment Agreements have terminated but whether there is still a qualifying Investment. Because the Investments are defined in terms of series-specific Accounts, GE posits that redemption of each bond series extinguished the associated Accounts and, with them, the qualifying Investment.

Both interpretations of the Investment Agreements are reasonable and cannot be reconciled with one another.  Section 2.2 of the Investment Agreements provides that interest payments shall be made on the "Investment" and until the "Termination Date."  Each party begins its interpretation with one of those key terms, and by following the plain language of the Investment Agreements the parties come to opposite conclusions as to whether NIFA is entitled to interest payments following bond redemption.  Although GE's interpretation is more nuanced than NIFA's, it is nonetheless reasonable and based on the language of the Investment Agreements and the indentures, which the Investment Agreements reference and, therefore, can be considered in construing the Investment Agreements.  *See Hallmark Synthetics Corp. v. Sumitomo Shoji New York, Inc.*, 275 N.Y.S.2d 587, 590 (1st Dep't 1966) ("Extrinsic matters such as letters and other instruments may be construed as a part of a contract where they are referred to therein or annexed thereto, or where it appears they were intended to be a part of the contract." (internal quotation marks omitted)), *aff'd*, 232 N.E.2d 646 (N.Y. 1967).  The parties' proffered interpretations show that the Investment Agreements are susceptible to more than one reasonable interpretation and are therefore ambiguous.  *See Law Debenture Trust Co.*, 595 F.3d at 466.

"If ambiguity is found [in a contract], it must be resolved -- as well as all inferences drawn -- against the moving party, which has the burden of establishing that no facts material to the outcome of the litigation are in dispute."  *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992).  Since the Investment Agreements are ambiguous regarding NIFA's entitlement to interest payments following redemption of the bonds, NIFA's motion for judgment on the pleadings is denied with respect to GE's claims for declaratory judgment on that issue.

C.      **Ultra Vires Activity**

NIFA's motion for judgment on the pleadings is denied with respect to GE's claims for

declaratory judgment regarding NIFA's alleged ultra vires activity.  Activity is ultra vires if it is

"beyond the scope of power allowed or granted by a corporate charter or by law."  Black's Law

Dictionary (10th ed. 2014); *cf. BLF Assoc., LLC v. Town of Hempstead*, 870 N.Y.S.2d 422, 425

(2d Dep't 2008) ("Towns and other municipal authorities have no inherent power to enact or

enforce zoning or land use regulations. They exercise such authority solely by legislative grant

and in the absence of legislative delegation of power[,] their actions are *ultra vires* and void."

(internal quotation marks omitted; alteration in original)).  GE alleges that NIFA "has improperly

obtained an above-market return on the monies purportedly invested pursuant to each Investment

Agreement to which it is not entitled," which violates the terms of the Investment Agreements

and indentures as well as NIFA's statutory mandate that its activities "shall not be conducted for

profit."  Neb. Rev. Stat. § 58-203(2).  This claim raises two factual issues -- which party's

interpretation of the Investment Agreement is correct and whether NIFA has received an above-

market return on its investment -- neither of which can be resolved on a motion for judgment on

the pleadings.  *See Sellers*, 842 F.2d at 642 (judgment on the pleadings may be granted "where

material facts are undisputed and where a judgment on the merits is possible merely by

considering the contents of the pleadings").  NIFA's motion is denied with respect to this claim.

D.      **Breach of Contract**

NIFA's motion for judgment on the pleadings is denied with respect to GE's breach of

contract claim.  The elements for a breach of contract claim under New York law are:  "(1) the

existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach

of contract by the defendant, and (4) damages."  *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d

Cir. 1996); *accord Harris v. Seward Park Hous. Corp.*, 913 N.Y.S.2d 161 (1st Dep't 2010).  GE has sufficiently alleged that it entered into the Investment Agreements with NIFA, that GE paid and continues to pay NIFA interest pursuant to the Investment Agreements, and that GE has been damaged by NIFA's acceptance of interest payments following bond redemption.  Whether NIFA breached the Investment Agreements cannot be determined at this stage of the proceedings because, as explained above, the Investment Agreements are ambiguous.  Accordingly, NIFA's motion is denied with respect to this claim.

      **E.    Remaining Claims**

      NIFA's motion for judgment on the pleadings is granted with respect to GE's claims for unjust enrichment, constructive trust and breach of the duty of good faith and fair dealing because they duplicate GE's contract claims.  Under New York law, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."  *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987); *see also N. Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 107 (S.D.N.Y. 2013) (dismissing claims for unjust enrichment and constructive trust as duplicative of contract claims).  Similarly, New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."  *Harris v. Provident Life and Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).  Because GE's unjust enrichment, constructive trust, and breach of the duty of good faith and fair dealing claims are based on the same allegations as the contract claims and GE has not challenged the validity or enforceability of the Investment Agreements, those claims are dismissed.

**IV.     CONCLUSION**

For the foregoing reasons, NIFA's motion for judgment on the pleadings is GRANTED

as to the unjust enrichment (Count IX), constructive trust (Count X) and breach of the duty of

good faith and fair dealing (Count XII) and DENIED in all other respects.

The Clerk of Court is directed to close the motions at Dkt. No. 52 and Dkt. No. 60.

SO ORDERED.

Dated: September 14, 2016
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE